# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ZACHARY ABRAMS, RHETT OHLSON, SIMON JONES, CRAIG SUCH, and ROBERT CRANE,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.,<br><br>Defendant. | Case No. 22-cv-01046-BLF<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re: ECF 35] |
| ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.,<br><br>Counterclaimant,<br><br>v.<br><br>ZACHARY ABRAMS, RHETT OHLSON, SIMON JONES, CRAIG SUCH, and ROBERT CRANE,<br><br>Counterdefendants. | |

This action arises out of an insurance coverage dispute relating to the directors & officers liability provisions of a policy issued by Defendant Allied World Assurance Company (U.S.) Inc. ("Allied") to non-party Altierre Corporation ("Altierre"). The action was brought by five of Altierre's former directors and officers, who are insureds under the policy ("the Insureds") and who have been sued in state court for breach of fiduciary duties they owed to Altierre and its shareholders ("the Underlying Action"). The Insureds tendered the Underlying Action to Allied but Allied denied coverage based on two policy exclusions, the Insured Capacity Exclusion and the Major Security Holder Claims Exclusion.

The Insureds, who are Zachary Abrams ("Abrams"), Rhett Ohlson ("Ohlson"), Simon Jones ("Jones"), Craig Such ("Such"), and Robert Crane ("Crane"), thereafter filed this suit against Allied for declaratory judgment, breach of contract, and bad faith. Allied has filed a counterclaim for declaratory judgment that it has no duty to defend or indemnify the Insureds in the Underlying Action.

The Insureds now move for partial summary judgment that the two policy exclusions relied on by Allied do not apply. For the reasons discussed below, the Court GRANTS the Insureds' motion for partial summary judgment that the Insured Capacity Exclusion and the Major Security Holder Claims Exclusion do not preclude coverage of the Underlying Action.

## I. BACKGROUND

Non-party Altierre was a California corporation that developed and sold hardware and software related to the display of retail prices. *See* Abrams Decl. ¶ 2, ECF 35-2. Abrams, Ohlson, Jones, Such, and Crane were officers and directors of Altierre at various times. *See id.* ¶¶ 4-5. While serving in these capacities at Altierre, Abrams and Such also held positions at another company, Stratim Capital, LLC ("Stratim"). *See* Abrams Decl. ¶ 6. Abrams was the principal of Stratim, and Such was a Stratim partner. *See id.* At some point, Crane, Jones, and Ohlson obtained positions at a Stratim-related company, Store Intelligence. *See* Abrams Decl. Ex. D (Underlying SAC) ¶ 73, ECF 35-6. Other Stratim-related companies were shareholders in Altierre. *See id.* ¶ 31.

*The Books and Records Action*

One of Altierre's shareholders, Kline Hill, filed a state court petition for writ of mandate on March 30, 2020, seeking access to Altierre's books and records ("Books and Records Action"). *See* Abrams Decl. Ex. B (Petition), ECF 35-4. The petition alleged that Abrams had seized control of Altierre and executed several transactions to the benefit of Stratim and to the detriment of other shareholders. *See* Pet. ¶ 2. The petition also alleged that Abrams and Stratim had blocked Kline Hill from obtaining Altierre's records, and that Kline Hill needed Altierre's records to determine "whether certain directors and officers of Altierre (including Abrams) breached their fiduciary duties to Altierre and its shareholders." *Id.* ¶¶ 1-5.

2

On June 11, 2020, Kline Hill amended its writ petition to add factual allegations regarding a foreclosure on Altierre's assets. *See* Abrams Decl. Ex. C (Am'd Petition), ECF 35-5. In the amended petition, Kline Hill alleged that "[f]ollowing the filing of the Verified Petition, Stratim reached an agreement with the Company's largest creditor, Trinity Capital ('Trinity') to foreclose on all of the Company's assets without notice to shareholders, without a shareholder vote, and upon information and belief, without approval from the Company's Board of Directors (the 'Board'). Upon information and belief, Stratim now controls the Company's assets." *Id.* ¶ 8.

*Underlying Action*

On August 13, 2021, Kline Hill filed the Underlying Action in state court, asserting claims for breach of fiduciary duties against Abrams, Ohlson, Jones, Such, and Crane, and asserting related claims against various Stratim-related companies. *See* Abrams Decl. ¶ 15. The second amended complaint in the Underlying Action ("Underlying SAC") alleges that Abrams took control of Altierre's board and thereafter took actions that benefitted Stratim to the detriment of Kline Hill and other shareholders. Underlying SAC ¶¶ 38-58. Abrams allegedly hired and/or promoted Ohlson, Jones, Such, and Crane, who became Altierre board members and were "beholden" to Abrams. *See id.* ¶¶ 83, 85, 100. Abrams, with the complicity of the other Insureds, allegedly approved "a secret agreement with Altierre's largest secured creditor pursuant to which the creditor foreclosed on Altierre's assets and on the same day flipped the assets to a Stratim affiliate." Underlying SAC ¶¶ 1, 9, 95-97. Kline Hill claims that the Insureds and Stratim effectively stripped Altierre of its assets, leaving Altierre's other shareholders with "an empty shell worth nothing." *Id.* ¶¶ 7-8.

"At the time of the events at issue, Kline Hill owned approximately 9% of Altierre's stock on a fully diluted basis." *Id.* ¶ 99 n.7. In May 2021, after filing the Books and Records Action but prior to filing the Underlying Action, Kline Hill bought additional stock that brought its total ownership to 48.8% of Altierre on a fully diluted basis. *See id.* ¶¶ 33, 99 n.7.

*Tender of Books and Records Action and Underlying Action under the Policy*

Abrams tendered both the Books and Records Action and the Underlying Action to Allied under a Management Liability Package Policy that Altierre obtained from Allied for the period

3

January 1, 2020 to January 1, 2021. *See* Abrams Decl. ¶¶ 10, 15; Def.'s Ex. 1 (Policy), ECF 46-5. Allied accepted the tender of the Books and Records Action but denied coverage of the Underlying Action. *See* Abrams Decl. ¶¶ 10, 15.

   *Relevant Policy Provisions*

   The policy's Directors & Officers Liability Coverage Section ("D&O Section") provides that Allied will pay the loss arising from a claim against an "Insured Person" for a "Wrongful Act." Policy D&O Sec. I.B., at AWOPP032. "Insured Person" is defined to include an "Executive." Policy D&O Sec. II.I, at AWOPP036. "Executive" in turn is defined to include any "past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers of" Altierre. Policy D&O Sec. II.N, at AWOPP037. "Wrongful Act" means "with respect to an Insured Person, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an Insured Person in his or her capacity as such, or any matter claimed against an Insured Person by reason of his or her status as such." Policy D&O Sec. II.S, at AWOPP039.

   Allied does not dispute that Abrams, Ohlson, Jones, Such, and Crane are Insured Persons under the policy's D&O Section. However, Allied takes the position that two policy exclusions preclude coverage of the Underlying Action. The first exclusion is the "Insured Capacity Exclusion," which excludes from coverage any loss "alleging, arising out of, based upon or attributable to any actual or alleged act or omission of any *Insured Person serving in any capacity other than as an Executive. . . .*" Policy D&O Sec. III.G, at AWOPP040 (italics added). The second exclusion is the "Major Security Holder Claims Exclusion," which provides as follows:

> The Insurer shall not be liable to make any payment for Loss from *any Claim made against any Insured by* or on behalf of, or in the name or right of, *any past, present or future security holder of the Company*, or the estate, beneficiaries, heirs, legal representatives or assigns of such security holder, *who owns or owned as of the date of the Claim*, or previously did own, beneficially or in trust, separately or in the aggregate, *a 10% or more equity interest in the Company*, whether such equity interest is in the form of common stock, preferred stock, membership units or other equity interest, including, but not limited to, any such Claim in the form of a security holder derivative action or any representative class action.

Policy Endorsement No. 2, at AWOPP007 (italics added, bold omitted).

4

*Present Action*

The Insureds filed this suit against Allied on February 18, 2022, asserting claims for: (1) declaratory judgment that Allied is obligated to defend and indemnify them against the Underlying Action; (2) breach of contract; and (3) bad faith. *See* Compl., ECF 1. Allied filed an answer and counterclaim for declaratory judgment on April 20, 2022. *See* Answer and Counterclaim, ECF 25. The Insureds answered the counterclaim on May 11, 2022. *See* Answer to Counterclaim, ECF 27.

The Insureds filed the operative FAC in this action on October 25, 2022, solely to correct Defendant Allied's name in the pleading. *See* FAC, ECF 58. The parties stipulated that all of the pleadings and papers filed prior to the filing of the FAC would remain valid, and that Allied did not need to file a new answer and counterclaim. *See* Stip., ECF 56.

The Insureds now seek partial summary judgment that neither the Insured Capacity Exclusion nor the Major Security Holder Claims Exclusion apply to preclude coverage of the Underlying Action. *See* Mot. at 3.

**II.    LEGAL STANDARD**

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*, 627 F.3d at 387. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. (quotation marks and citation omitted).

## III. DISCUSSION

The Insureds seek partial summary judgment that the Insured Capacity Exclusion and the Major Security Holder Claims Exclusion do not apply to preclude coverage of the Underlying Action. In opposition, Allied contends that those exclusions preclude coverage in light of the allegations of the Underlying Action and undisputed facts regarding Kline Hill's ownership interest in Altierre.

Because this is a diversity action, the Court looks to the substantive law of the forum state in determining the applicability of the two exclusions. *See Encompass Ins. Co. v. Coast Nat'l Ins. Co.*, 764 F.3d 981, 984 (9th Cir. 2014) ("California's substantive insurance law governs in this diversity case." (internal quotation marks and citation omitted)). Under California law, "'[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation.'" *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003) (quoting *Waller v. Truck Ins. Exch.*, Inc. 11 Cal. 4th 1, 18 (1995)). Interpretation of a policy is controlled by the "clear and explicit meaning" of the contract provisions, which are "interpreted in their ordinary and popular sense" unless given a special meaning by the parties. *Id*. at 647-48. Policies are interpreted broadly to afford the greatest possible protection to the insured, while "exclusionary clauses are interpreted narrowly against the insurer." *Id*. at 648 (internal quotation marks and citations omitted).

The Court addresses the Insured Capacity Exclusion and the Major Security Holder Claims Exclusion in turn below. Before doing so, however, the Court observes that the Insureds' counsel suggested during oral argument that the scope of the motion is broader than determining whether the two exclusions apply. Specifically, counsel indicated that the Insureds seek partial summary judgment that they are entitled to defense and indemnification of the Underlying Action under the policy, and that Allied is in breach of contract for declining coverage. The Court advised the parties that its ruling on the motion will be limited to the two issues identified in the Statement of Issues set forth in the Insureds' motion, which are:

> 1. Were the Insureds operating within their insured-capacity where, as here, the Underlying Litigation resulted from the Insureds' alleged actions taken as officers and directors of Altierre?

6

2. Does the Major Security Holder Claims Exclusion apply where, as here, Kline Hill's first Claim occurred on March 30, 2020, when it undisputedly had less than 10% stock interest in Altierre?

Mot. at 3.

### A. Issue 1 – Insured Capacity Exclusion

The Policy expressly excludes from coverage any loss "alleging, arising out of, based upon or attributable to any actual or alleged act or omission of any *Insured Person serving in any capacity other than as an Executive*. . . ." Policy D&O Sec. III.G, at AWOPP040 (italics added). The Insureds seek partial summary judgment that this Insured Capacity Exclusion does not exclude coverage of the Underlying Action, arguing that the claims asserted against them in the Underlying Action arise from acts taken in their capacities as executives of Altierre. Allied contends that coverage is excluded because the claims of the Underlying Action arise at least in part from the Insureds' acts in their capacities as agents of Stratim and Stratim-related companies.

There is a surprising dearth of cases interpreting capacity exclusions under California insurance law. The only such case cited by the parties is *XL Specialty Ins. Co.*, which involved a coverage dispute regarding underlying actions for breach of fiduciary duties against directors of a company called Pacific World Corporation ("Pacific World"). *See XL Specialty Ins. Co. v. AIG Specialty Ins. Co.*, No. 2:20-cv-06540-VAP-SHKx, 2021 WL 3185451 (C.D. Cal. July 13, 2021). Five of the directors had been placed on the board by Pacific World's majority shareholder, Levine Leichtman Capital Partners ("LLCP"). *See id*. at *5. Pacific World and its directors had D&O coverage through a policy issued by AIG Specialty Insurance Co. ("AIG"). *See id*. at *6. However, LLCP and its executives were not insureds under the AIG policy, but were insured by a separate set of policies, including a policy issued by XL Specialty Insurance Co. ("XL Specialty"). *See id*. XL Specialty provided coverage for the underlying actions and then sued AIG for subrogation, asserting that the AIG policy provided primary coverage for the director defendants. *See id*. at *10. AIG argued that coverage of the underlying actions was precluded under a capacity exclusion in its policy, which in relevant part excluded coverage for claims by an insured serving in any capacity other than as an executive of Pacific World. *See id*. The AIG policy's capacity exclusion, referred to as "Exclusion 4(g)," read as follows:

7

> [T]he Insurer shall not be liable to make any payment for that portion of Loss in connection with that portion of any Claim made against an Insured: . . . (g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Individual Insured serving in any capacity, other than as an Executive, Employed Lawyer, Controlling Person or Employee of a Company, or as an Outside Entity Executive of an Outside Entity.

*Id*. at *7. AIG argued that the LLCP-appointed directors were acting in their capacities as LLCP executives during the relevant time period, and therefore that the exclusion applied. *See id*. at *10.

On cross-motions for summary judgment, the district court rejected AIG's argument and held that Exclusion 4(g) did not apply to preclude coverage of the underlying actions. *See XL Specialty Ins. Co.*, 2021 WL 3185451, at *18-19. Construing Exclusion 4(g) narrowly under California law, the district court concluded that the exclusion did not apply because the underlying actions "were alleged against the Director Defendants in their capacities as Pacific World executives only." *Id*. at *18. "In other words," the district court held, "the allegations in the Underlying Lawsuits did not state the Director Defendants were 'serving in any capacity, other than as an [e]xecutive' of Pacific World when they approved the 2014 loan or 3 distributions, nor did the claims 'arise out of' the Director Defendants operating as LLCP executives when they did so." *Id*.

This Court agrees with the reasoning of *XL Specialty Ins. Co.*, specifically, that the capacity exclusion did not apply given that the underlying action did not allege that the director defendants were serving in any capacity other than as executives of Pacific World. In the present case, however, the allegations of the Underlying Action are not quite so clear. The gist of the Underlying SAC is that the Insureds took control of and looted Altierre for the benefit of Stratim and Stratim-related companies. Abrams, who was both an Altierre executive and a principal of Stratim, allegedly took control of Altierre's board and used his position "to entrench Stratim's position" in Altierre while taking various actions that were detrimental to Kline Hill and other investors. Underlying SAC ¶¶ 9, 38-58. Abrams hired or promoted Ohlson, Jones, Such, and Crane, who became Altierre board members and were "beholden" to Abrams. *See id*. ¶¶ 83, 85, 100. The Underlying SAC alleges that because of their positions with Altierre, the Insureds owed fiduciary duties to Altierre and its shareholders, including Kline Hill. *See id*. ¶¶ 95, 110, 127-28.

8

The Insureds allegedly breached those fiduciary duties by acting for the benefit of themselves and the Stratim companies, and to the detriment of Altierre and its shareholders. *See id*. ¶¶ 112-13, 129. The Underlying SAC expressly refers to Abrams as the "agent" of the Stratim companies and alleges that he received the notice of foreclosure from Trinity at his Stratim email address *See id*. ¶¶ 118, 141. The Underlying SAC also alleges that Such signed the consents to the strict foreclosure on behalf of the Stratim companies. *See id*. ¶ 71.

Although these allegations make it a closer call, this Court ultimately reaches the same conclusion as the *XL Specialty Ins. Co.* court. The claims asserted against the Insureds in the Underlying SAC are for breach of fiduciary duties owed solely based on their capacities as Altierre executives. While the Insureds' executive positions, or expected future positions, with the Stratim companies certainly provided a motive for their alleged actions, the Insureds are not sued for breach of any fiduciary duties arising from their roles as Stratim executives. Accordingly, the Court finds as a matter of law that the Insured Capacity Exclusion does not exclude coverage of the Underlying Action.

The Court acknowledges Allied's argument that its policy's Insured Capacity Exclusion differs somewhat from the capacity exclusion at issue in *XL Specialty Ins. Co.* Those differences are irrelevant to the Court's analysis, however. The *XL Specialty Ins. Co.* court's decision turned on the fact that the claims in the underlying actions arose from the directors' conduct as executives of Pacific World, as this Court's decision turns on the fact that the claims in the Underlying Action arose from the Insureds' conduct as Altierre executives.

The Court similarly finds it unnecessary to address the *XL Specialty Ins. Co.* court's alternative holding that Exclusion 4(g) would not exclude coverage even if the director defendants in that case had acted in a dual capacity as executives of both Pacific World and LLCP. *See XL Specialty Ins. Co.*, 2021 WL 3185451, at *19. Having concluded that the Underlying SAC asserts claims for breach of fiduciary duties arising from the Insureds' capacities as Altierre executives, the Court need not and does not consider whether actions taken in a dual capacity would trigger the Insured Capacity Exclusion of the Allied policy.

Allied cites *Medill* for the proposition that "there is no coverage under the policy where

9

any insured engaged in the excluded activity." *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 832 (2006). *Medill* would be applicable if the Court were to conclude that some, but not all, of the Insureds are sued in the Underlying Action for acts taken in a capacity other than as an executive of Altierre. However, for the reasons discussed above, the Court concludes that the fiduciary duty claims asserted against the Insureds in the Underlying Action arise from acts taken in their capacities as Altierre executives.

Finally, the Court declines to follow the two out-of-state cases cited by Allied. *See, e.g., Langdale v. National Union Fire Insurance Co. of Pittsburgh, Penn.*, 609 F. App'x. 578 (11th Cir. 2015); *Goggin v. National Union Fire Insurance Co. of Pittsburgh*, No. N17C-10-083-PRW-CCLD, 2018 WL 6266195 (Del. Super. Ct. Nov. 30, 2018). As an initial matter, those cases do not apply California law and thus are of limited utility. Moreover, in *Langdale* and *Goggin*, the courts found that the insureds were acting in dual capacities, which impacted application of the capacity exclusions. In the present case, the Court has determined that the fiduciary duty claims asserted against the Insureds in the Underlying Action arise solely from the Insureds' actions in their capacities as Altierre executives.

Accordingly, the Court GRANTS the Insureds' motion for partial summary judgment that the Insured Capacity Exclusion does not exclude coverage of the Underlying Action.

### B.     Issue 2 – Major Security Holder Claims Exclusion

The Major Security Holder Claims Exclusion provides that:

> The Insurer shall not be liable to make any payment for Loss from *any Claim made against any Insured by* or on behalf of, or in the name or right of, *any past, present or future security holder of the Company*, or the estate, beneficiaries, heirs, legal representatives or assigns of such security holder, *who owns or owned as of the date of the Claim*, or previously did own, beneficially or in trust, separately or in the aggregate, *a 10% or more equity interest in the Company*, whether such equity interest is in the form of common stock, preferred stock, membership units or other equity interest, including, but not limited to, any such Claim in the form of a security holder derivative action or any representative class action.

Policy Endorsement No. 2, at AWOPP007 (italics added, bold omitted).

The Insureds seek partial summary judgment that this exclusion does not exclude coverage of the Underlying Action. While the Insureds acknowledge that Kline Hill owned a 10% or more equity interest in Altierre when Kline Hill filed the Underlying Action in August 2021, the

1  Insureds point out that Kline Hill owned less than a 10% equity interest in Altierre when Kline
2  Hill filed the Books and Records Action in March 2020.  Under the terms of the policy, "All
3  **Related Claims** shall be deemed to be a single **Claim** made on the date on which the earliest
4  **Claim** within such **Related Claims** was first made."  Policy Sec. V.D, at AWOPP026.  "Related
5  Claims" are "all **Claims** for **Wrongful Acts** based upon, arising out of, or in consequence of the
6  same or related facts, circumstances, situations, transactions or events or the same or related series
7  of facts, circumstances, situations, transactions or events."  Policy Sec. II.F, at AWOPP024.
8  Under these definitions, the Insureds contend, the Books and Records Action and the Underlying
9  Action are "Related Claims," and therefore the Underlying Action is deemed to be a claim made
10 in March 2020.  Because Kline Hill did not own a 10% or more equity interest in Altierre as of
11 that date, the Insureds argue that the Major Security Holder Claims Exclusion is not triggered.

12 Allied does not dispute that under the policy's provisions regarding related claims, the
13 Underlying Action is deemed to be a claim made in March 2020.  Nor does Allied dispute that
14 Kline Hill owned less than a 10% equity interest in Altierre in March 2020.  However, Allied
15 contends that the Major Security Holder Claims Exclusion nonetheless excludes coverage of the
16 Underlying Action based on Kline Hill's subsequent acquisition of stock that brought its total
17 ownership to approximately 50% of Altierre.  Allied argues that the exclusion of coverage for
18 claims made by a security holder "who owns or owned as of the date of the Claim . . . a 10% or
19 more equity interest in the Company" applies if the claimant holds the requisite equity interest at
20 any point in the claim's existence.

21 The Court finds Allied's argument to be unpersuasive for several reasons.  First, there is no
22 comma after the word "owns," meaning that both "owns" and "owned" are modified by the phrase
23 "as of the date of the Claim."  This reading is consistent with the language of the exclusion as a
24 whole, which provides in relevant part that Allied is not liable for loss from "any Claim *made*" by
25 a security holder who meets the ownership threshold.  Policy Endorsement No. 2, at AWOPP007
26 (emphasis added).  Nothing in the exclusion suggests that its applicability to a Claim "made" may
27 be altered by the claimant's subsequent acquisition of shares in Altierre.
28 Second, the Insureds assert that the only three decisions they discovered addressing a

11

major shareholder exclusion determined the exclusion's applicability by reference to a fixed date such as the policy's inception date, the date of the alleged wrongful act, or the date the claim is asserted against the insured. *See EMSI Acquisition, Inc. v. RSUI Indem. Co.*, 306 F. Supp. 3d 647, 654 (D. Del. 2018), *aff'd*, 787 Fed. Appx. 97 (3d Cir. 2019); *Madison Mech., Inc. v. Twin City Fire Ins. Co.*, CV SAG-17-01357, 2019 WL 6035690, at *5 (D. Md. Nov. 14, 2019); *McGowan v. Liberty Ins. Underwriters, Inc.*, 20-CV-23508-UU, 2020 WL 8186268, at *3 (S.D. Fla. Oct. 26, 2020). Importantly, none of the decisions suggest that the claimant's post-claim acquisition of shares alters coverage.

Third, even if Allied's interpretation were plausible – and the Court finds that it is not – the exclusion is at best ambiguous. Under California law, policies are interpreted broadly to afford the greatest possible protection to the insured, while "exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th at 648 (internal quotation marks and citations omitted).

Accordingly, the Court GRANTS the Insureds' motion for partial summary judgment that the Major Security Holder Claims Exclusion does not exclude coverage of the Underlying Action.

## IV. ORDER

(1) The motion for partial summary judgment brought by Plaintiffs in this action, Abrams, Ohlson, Jones, Such, and Crane, is GRANTED as follows:

  (a) the motion for partial summary judgment that the Insured Capacity Exclusion does not exclude coverage of the Underlying Action is GRANTED; and

  (b) the motion for partial summary judgment that the Major Security Holder Claims Exclusion does not exclude coverage of the Underlying Action is GRANTED.

(2) This order terminates ECF 35.

Dated: February 24, 2023

_____
BETH LABSON FREEMAN
United States District Judge